Mr. Kent. If I could please the Court, I'm Scott Kidd, representing the appellate Nolan Estes. This case involves the interpretation of Article 16, Section 50A.6 of the Texas Constitution dealing with home equity loans. The issues really are twofold. One, under Article 16, Section 50A.6 of the Texas Constitution, is forfeiture of principle and interest, the available remedy for failure of the note holder to cancel and return the note and give a release of lend to the borrower following full payment. The other issue is whether or not the plaintiff's complaint states a cause of action for breach of contract. Okay. If forfeiture is the right remedy, do you as the lender have to forfeit more than you got? No. Okay. Do we even know from your complaint that Chase got anything? What they have to forfeit, and the cases are clear here, is they forfeit all of the principle and all of the interest that has been paid. Okay. But what if they – let's say that Chase was the lender – let's say that you had paid a 30-year mortgage, and it's the last month of the 30th year, and suddenly Chase takes over this bank or something and ends up with this note and gets one payment and then screws everything else up. Okay. Does Chase owe the whole $100,000 of the note or just the month that they got? In other words, can they forfeit more than they received? Yes. Okay. The Constitution, I think the language is pretty simplistic and straightforward. It is the holder. It is an obligation of the holder to return the promissory note. But it doesn't say – it's saying forfeit. To me, the word forfeit is I have to give up something I have. But what if I don't have it? What if I never had it? How can I forfeit it? I submit that the language itself supports that what they forfeit is all of the principle and interest of the note, not just what this particular holder received, but the lender or holder who fails to comply, which is the obligation to return the note and issue the release of lend, give it to the borrower. That holder is subject to forfeiture. Now, they have – that's very harsh, I recognize. You said subject to forfeiture, but a minute ago you said that cases hold that the amount is forfeiture. What cases are you talking about that have actually awarded forfeiture for a violation of the Constitution, this particular Constitution? I will submit some additional authorities that the Thomason case, which is a district court case, Judge Charles Nallen in Austin specifically held that that was a forfeiture of the full amount of the principle and all of the interest which has been paid. And I think that if you look at the language of – in Norwood, the Finance Commission of Texas versus Norwood, which is cited in the brief, Justice Hecht, writing for the Supreme Court, said that the failure of the lender or holder to comply, whether intentional or inadvertent, and he characterized the result as draconian, but he said it is not only the loss of your lend, but forfeiture of all principle and interest. So the Texas Supreme Court has recognized that. That's why it's draconian, but there's a difference between being – it's draconian for me to have to give back everything that you paid me, but it's, I mean, way out for me to give you back stuff you never paid me. So, like, I'm the last guy in a long series of guys. I get $1,000 from you, and I've got to pay you $100,000. That's not draconian. That's very, very far out. And I don't know. I mean, the thing that strikes me about this case is it's being written about in a very small prism instead of in the broader picture of Texas's history with home equity loans and, frankly, with usury. That's what this reminds me of. Yes. And back when there were usury laws that you could actually enforce, the idea of forfeiture meant, okay, you no longer can collect the principle. I never understood it to mean, and I did usury law, you know, 100 years ago, but when I did it, I never understood it to mean the lender has to pay money it never received as opposed to not be able to collect and have to give disgorge, but not to pay back money it never received. I'll admit it has been a while since I had a case under the old usury law, but under that, my recollection under that provision, that statute, what would happen if your loan was, if your interest rate was more than twice the permissible rate for that loan, there was a forfeiture of all principle and you had to pay back, and you, the lender, had to pay twice the interest that was charged. That was clearly spelled out as a you pay that, but what I'm saying is it never said you had to forfeit, i.e., pay principle you never received, but you could no longer collect it and you had to give back what you did receive in the double usury case. Okay, so that's why, to me, the word forfeit, when they want to say you've got to pay something twice, whatever, they know how to say that. To me, the term forfeit means to give back something you've got, and there's nothing here that shows Chase got anything, nothing in your complaint. There is other stuff that you put in, but your complaint actually says Chase currently holds the note. Yes. It doesn't even say it held the note when you wrote the demand letter or when you made the payment. There's no indication you ever paid Chase anything in your complaint, and so how can we find even that this draconian remedy ought to apply? Well, because, again, I think it is a strict reading of the forfeiture provision in 50A6Q10, which is that the holder forfeits all principle and interest. And we know what the principle is. We know what the interest is. That's all calculable. Don't they have to be the holder at the time that you write the letter saying I want my note back? We did allege notice to Chase. Right. And the fact that they did not respond, they did not comply. But you haven't put those. I mean, have you read your complaint? Yes. Sir, it really is completely a mystery document. It doesn't connect Chase to this at all, and it's only when you really delve into the records you find one or two pages here that suggest Chase was involved. But your complaint simply says they're currently the holder at the time you filed the lawsuit. Well, that doesn't tell me anything about when you paid and when you made your demand and all of those other things because we know notes can be the whole purpose of this section about getting your note back. And so some unscrupulous lender can't take your note and assign it to somebody else, and that innocent third party doesn't come after you for that. So we know you could be the holder of a note that's been fully paid without ever having to receive the dime. That's the whole reason for that provision, right? Well, I think the reason for the provision, looking at it historically, the Texas Protection of Homestead goes back to the Constitution of 1876, and lenders tried to utilize some way to get access to the equity as security time and again. They couldn't. They couldn't. They couldn't. What is the reason for this provision, the provision that if I've paid off my house, I should get the original note back and a recordable release of lien? What is the purpose of that? The purpose for that is the protection for the borrower so that the borrower will not ‑‑ it's clear his homestead is protected because when he pays off that loan, he has the original note marked canceled in his hand and a release from the lien holder in his hand. So that the lien holder can't unscrupulously go sell this note to somebody else as if it's still an existing note. Yes. Okay. Yes. So your allegation that Chase is currently the holder of the note doesn't tell us anything that would help us understand who's responsible for getting you the note back at the time because you currently have the note back. Except we do allege that Chase was the holder of the note, and that is what the Constitution requires. At what point? At the time that it's paid. I don't think you actually said that. I ‑‑ You actually said that. If I didn't, I'm surprised. But that was the purpose of the allegation is that Chase was the holder of the note. They had an obligation to return it to Mr. Estes and did not do so. That is the obligation to cancel and return that note is a substantive obligation and right. And it is simple enough for the lender or holder to comply with. And I recognize this is a harsh ‑‑ Your pleading was Chase is now the holder of the note. Yes. The note was originally signed to ‑‑ Okay. But you said now. When you filed your complaint, that's now. How does that tie to anything relevant? Well, perhaps it needed the implication that they were the holder at the time that the note was paid. If I didn't specifically say that, I certainly intended that to be interpreted there. Because Chase was the holder of the note at the time that it was paid, and I thought I had alleged that. Okay. Under the Stringer v. Ascendant Mortgage, this is a substantive obligation of the holder of the note. There are very few Texas cases which address the forfeiture issue. Most of them address it only in terms of an obligation that must be created at the time of loan origination. And the particular case is Vincent v. Bank of America. And in that case, it dealt with the credit for principal and interest that was contained within the loan agreement. And it provided for a particular way that the principal and interest would be credited. Apparently, the Vincents didn't make their payments in any sort of set amount, and the bank had not applied it, the principal and interest, according to the loan agreement. The Vincents argued that that was a violation of the terms of the credit, and therefore, they were entitled to forfeiture. What the court held in Vincent was that you do not get forfeiture for violations of the loan agreement that are not constitutionally mandated. You only get forfeiture for violations or breaches, it said, of the loan agreement provisions that are constitutionally mandated. The requirement that the note be canceled and returned to the borrower and a release of lien given is constitutionally mandated. So I submit that under Stringer v. Ascendant Mortgage, saying that is a substantive right and obligation, and under Vincent v. Bank of America, this is an obligation that they had to comply with, and you get forfeiture for their failure to do so. Now, one other thing, they keep referring to the fact that you only get this for things that happen at, and we get forfeiture for things that happen at loan origination. The distinction here is that of the, like, 26 detailed requirements in Article 16, Section 50A.6 to make a valid loan, this one is the only one that a note holder has to comply with after origination. So it makes no sense to say you can only, as long as our documents look right, as long as everything is correct on the front end, forfeiture is not available because this particular substantive obligation could not be breached until the loan is actually paid off, and that would not occur at loan origination. You say in your brief that there are no Texas cases, trial court, intermediate appellate, or Supreme Court, Texas Supreme Court cases that have dealt with this issue at all. That is, there are no Texas cases, and I don't believe there are any Fifth Circuit cases, that deal with the specific issue of the right to forfeiture for failure to return the note and issue a release of lien. Isn't that telling? I don't think it's particularly telling, Your Honor. I think that most people haven't paid attention to the fact that they didn't get their note back. I think that is a clear example. I think that's something the Texas Supreme Court, since it is so draconian, if you're right, if you get past the complaint problem and several other problems you have and we get to kind of this bottom line question, isn't that something that in the first instance the Texas Supreme Court should address? I don't disagree with that, Your Honor. And in my brief, I do mention the fact that the court could consider certifying this issue to the Texas Supreme Court. At least, I think, three times in the past, this court has certified questions that deal with the interpretation of 50A6 to the Texas Supreme Court. They accepted those? And they have accepted those. The Senate mortgage case, the Stringer was one, Sims was one, and I'm trying to remember the third one. I can't remember the third one off the top of my head. You've cited it in your brief. Yes, Your Honor. So I agree that it is a thing of particular importance to Texas. We're talking about, you know, the greatest expression of the public policy of a state is in its Constitution. And while this is not necessarily an example of artful draftsmanship, the 50A6, it is in the Constitution. Well, it had to be because it was prohibited, wasn't it? Yes. How much is, what's the calculation? I think Dr. Estes' loan was a principal sum of $350,000. And I want to say that he had, I don't have the number in front of me, but about $50,000 worth of interest paid on it. So about $400,000. About $400,000. All right. Okay. Thank you, Mr. Kidd. You've reserved rebuttal time. All right. Ms. Chilton. Good morning, Your Honors. My name is Marcy Scout, and I represent JPMorgan Chase Bank. Mr. Estes claims that because his original promissory note was not returned to him, that he's entitled a forfeiture of all amounts of principal and interest. And he asserts two distinct causes of action. Why aren't you making the complaint argument more as your first point that I raised with your counsel opposite? Your Honor, I think personally the issues about the constitutionality and all the inner workings I find to be much more interesting arguments. Okay. You're trying to win the case for your client, aren't you? I understand, Your Honor. I appreciate it's exciting to be in the Fifth Circuit, and it's exciting to talk about the Constitution of Texas more than it is the complaint of your opponent. But to me it seems like his complaint doesn't make any allegations that get him anywhere against your client. And you made that argument in the district court, and you made it in passing to us. Why is that not your primary argument? Your Honor, a lot of times in 12B6 cases like this, I am reluctant to rely heavily on what seems to be technical errors in the briefing. I will certainly raise them because I do not want to waive those issues, and I certainly think the court can rule based on those issues. But to me those look like technical violations, and I don't want to be standing here in front of the court arguing just technical violations like that. I want to make sure that we get into the meat of all the issues as well. And so we certainly raise those issues. I certainly think those issues support affirming the dismissal. And I think you're right when you go back and read his complaint in detail. There's no allegation about Chase ever receiving any payments here. The allegation is that the holder at the time the note was paid off didn't return the note, and then the same paragraph says Chase is now the holder, which seems different. Yeah, questionable. And there was never any seeking of leave to amend or whatever. I mean, there's also the doctrine of constitutional avoidance. I grant you it's a U.S. Constitution, but I think we should be even more reluctant to construe the Texas Constitution than we are to construe the federal Constitution since we're federal judges. Not to say we're incapable of doing it, but if there is any doctrine of constitutional avoidance, I don't see why it doesn't also apply to the Texas Constitution. If there's a perfectly legitimate, his complaint just didn't say what it needed to say. Right. And I think the district It may be a technical point, but this whole thing is technical. I mean, his lien was released. He got his note back. So if the whole case is one big technical case, why wouldn't we resolve it on a technical basis? Certainly, Your Honor. You can resolve it on this technical pleading basis. I think the other sort of technical issue at work here is there's an overarching waiver issue. Dismissal can be affirmed on any grounds supported by the record. And in the trial court, we raised multiple grounds for dismissal of each cause of action. Despite that, in his opening brief, he didn't address all of those grounds. On the constitutional claim, he didn't address the limitations issue. And in the breach of contract claim, he didn't address the issue of damages other than just a passing reference in the brief, which would not be sufficient to preserve that error. So for that reason, this case could also be decided on waiver points. That said, I would like to delve into the merits of these various constitutional issues. And I'd like to start with the Constitution. I think the problem from your side on the Constitution is it makes very little sense to me that the document has to say, in order to meet the Constitution, it has to say, we'll give back the note and all of that, but then there's no remedy if you don't. Because there's never going to be damages if it was just the inadvertent lender and not the unscrupulous guy selling an already paid note, which is the reason it's in there. And if you have MERS releasing the lien online or whatever happened, there's no damages. So historic contractual damages aren't going to come into fore. So is this just kind of a nugatory provision then in the Constitution? Because everybody's going to put that in their document, but then it doesn't have any force when it comes down to the point 3, 5, 10, 30 years later when you finally pay the thing off. I think it does still have force. I think you're absolutely right that you are rarely, if ever, going to see a situation where there would be actual damages. I can't imagine a scenario where you would see actual damages. But the fact that the term is in the contract document will give a borrower who is really concerned about getting their original note back the ability to go to the court, seek specific performance of that provision. It does give the borrower some rights if they are that concerned about getting a promissory note back. I mean, that seems a little inconsistent with the whole protection of the borrower idea that borrowers are having to run around filing lawsuits to get their note back. The whole idea is it should be kind of automatic. I'm just kind of sitting in my house, and one day in the mail the note comes back. That's how my student loan got paid off. When I paid it off, one day I got a note in the mail, and it said canceled. I didn't have to go filing a lawsuit. As exciting as that would have been for a young lawyer, I didn't have to do that. So it seems weird that the Texas Constitution would be written so that borrowers have to file lawsuits to get their notes back. Right, and I think the question is whether the provision still has any meaning if there's not actual damages. And the fact that it gives rise to a potential claim for specific performance means it still has meaning. I don't think that lenders across the board are not returning promissory notes. Do lenders even keep original notes? Do they keep them? While the loan is still performing? Yeah, where are they? Because, I mean, that's paper, and people don't keep paper anymore. So where are the original notes? Yes, they keep original notes. Where are they? Chases are in Louisiana, Monroe. And so when notes are transferred, what happens? The physical paper copy is called an origination file. It moves. When we have original note issues come up in our office, we do get the original notes transferred to our office, and so we have a file cabinet that's locked that has a bunch of original notes in it. And then why, then, would there not also be a department for sending original notes back when things are paid off? It's outside the record, but there certainly is, and it certainly was attempted here. It was sent back. I don't want to get too far outside the record. It was sent back, but it was sent back. Well, I mean, your whole argument is outside the record, but for arguing the technical things, as you call them, in the complaint. Because why are we reaching the constitutional issue if he hasn't even pled it? The original note was returned to him, was mailed back to him, but it was mailed to the property address. And so it was returned to the bank undeliverable because the mail was not forwarded and the bank did not have a forwarding address. And that was done within 30 days of the payoff of the loan. So I don't think that this is some big, rampant problem out there. And I think in looking at the constitutional issue, it's important to really focus in on whether you— Why isn't that a defense to forfeiture? Why am I finding this outside the record? Why isn't that a defense that we sent it back? Because it was decided on a 12B6 motion. On a 12B6 motion, we couldn't introduce that evidence. Strategically, maybe it would have been better to bring this as a summary judgment where you could show that, but it was done as a 12B6. This case really is very messily done, to be honest with you. And I don't want to criticize the lawyers, but you've got a complaint that doesn't say what it needs to say. You've got defenses that aren't urged that should have been urged. And everybody just seems to want us to decide this issue in a vacuum, and I don't really like that. I mean, y'all both seem more interested in the constitutional issue than kind of what really happened in the case. It sounds like what really happened in the case is nothing. And so then I wonder why we're going to decide this big issue that could be very important to Texas and could really mess up things for one side or the other in these without it really being properly before us. And I understand your concern, Your Honor, but because it is a 12B6 standard, we're kind of constrained with what we could raise as defenses. Well, that brings us back to the complaint that you don't seem to want to talk about. Well, Your Honor, I agree with you that the complaint is absolutely a basis for affirming the dismissal here. But on the constitutional issue, the issue is whether you look at whether a loan satisfies the Constitution at the time of origination or future performance. And the Texas Supreme Court has told us where to look. In Sims, which is the 2014 case from the Texas Supreme Court, the court noted, and I quote, nothing in Section 50 suggests that a loan's compliance is to be determined at any time other than when it is made. So when judging the constitutionality of a home equity loan, you look at the time of origination and the time of origination only. The language of the Constitution also tells us that. The language of the Constitution, the specific provision issued here, requires that the loan be, quote, made on the condition that the note be returned. And again, it's made on, looking back, harkening back to the origination. Okay, why wouldn't we certify this question if we really get to the actual constitutional question? Why wouldn't we certify it? Your Honor, I don't believe there's a need to certify this question. I think the Texas Supreme Court in Sims gave us a direct quote indicating that from their standpoint, you look at origination to determine the constitutionality of a loan. It said that in direct language. It also discussed an example of that where loans are required to be scheduled on substantially equal payments. And the court discussed that and said that as long as that's in the loan agreement, the fact that then later you get off that schedule somehow, a borrower misses payments or what have you, that doesn't matter. What matters is that it included the provision of the get-go. And so the Texas Supreme Court in Sims told us that just last year. They also told us, gave us an indication in 2000 in the Stringer case when they said that 58-6 applied to what was required to make a valid loan. Again, harkening back to origination. The case law from Texas Intermediate Appellate Court also... Is there any other provision besides this one that would only matter at the end rather than at the beginning? Absolutely there are, Your Honor. There is a provision that requires a loan to be foreclosed only on a court order. So the deed of trust will say this deed of trust can only be foreclosed on a court order. Once that provision is in, that satisfies the Constitution. Of course, foreclosure isn't going to happen until sometime after origination, hopefully years and years later. That's the exact issue that was discussed in the Wells Fargo v. Robinson case. In Wells Fargo v. Robinson, the lender had obtained an order permitting foreclosure but it only permitted foreclosure on a date certain. The foreclosure actually took place on a different date, and the borrower came in and said that foreclosure was wrongful because there was not a court order authorizing that particular foreclosure. And the court agreed and said, You're right. That foreclosure was done without a court order. That is a wrongful foreclosure. But the borrower pushed further and sought the remedy of forfeiture and said, Well, that's a constitutional violation too. I get forfeiture of all principle and interest. And the court said no. So long as the loan agreement originally entered into by the parties complies with the constitutional requirements, there's no constitutional violation requiring forfeiture. There are other provisions besides these two. You can't have a prepayment penalty. So your loan documents have to say, No prepayment penalty can be charged to a borrower. Well, if then the borrower prepays and the bank turns around and charges the penalty, well, that's not a constitutional violation. That's a breach of the contract. So I do not think there's a need to certify this question to the Texas Supreme Court because we have indications from the Texas Supreme Court about how they would rule on this. You don't have nothing to really forfeit. So you're saying if at origination the documents don't meet the Constitution, then you loan the money and you can't get it back, that that's what happens. And other than that, there's no real penalty for violating these provisions. I'm not sure I understand your question. Well, because it seems to me, you know, so I guess, I mean, that would be serious, obviously, if you've loaned money and you have no way of getting it back. I understand that. But it seems to make the whole Texas Constitution into just a form file for documents. And so everybody gets a form of what you're supposed to have in there and puts it in there, and then that's kind of the end of the Texas Constitution. It just gets put in a bucket somewhere. And that just doesn't seem to me to be what was intended. And that's not what was intended. And when you look at the case law around this area, you see that because the constitutionality of a loan is judged by origination, you can look at all of the origination conduct. The Box v. First State Bank case is a good example of this. In that case, the provision at issue is the requirement that a borrower not be required to pay the lender, existing debt to the lender, out of the home equity loan proceeds. And the loan documents, they had their form file, and the loan documents recited that condition. But the court said, no, because this is origination conduct, we can look at the origination of the loan and see how the loan was really made. And though the loan document recited the required provision, we know because the lender told us, the lender admitted in testimony that we would not have made that loan if they weren't going to pay us back out of those proceeds, pay this preexisting debt to us. And so those provisions are not left without teeth because you can look at the origination conduct because the constitutionality is determined by the origination of the loan. Another example would be a 3% fee violation. Fees are limited to 3% of the principal balance of a loan. The loan documents can recite, fees do not exceed 3%. But then when we pull the HUD-1 for the loan and we see how all the fees were actually paid out, all done, again, in the context of origination, we can see how the fees were paid out, and actually it was 5%. That's a violation. So in judging the constitutionality at the time of origination, I don't think that strips the constitution of the power to protect the borrower. Instead, it limits the time we're going to look at. We're going to look at origination because that's what the constitution is concerned with. The constitution is concerned with ensuring that the loan is made in accordance with all these protections for the borrower. It's not concerned, then, with the future performance of those provisions outside of the context of origination. Breach of contract, wrongful foreclosure, traditional tort-type remedies will govern that. If we disagree with you and we think the forfeiture might be a remedy if you fail to return the note and all of that, what is your take on the issue of what forfeiture means? i.e., does Chase have to pay back only what it received, or does it have to pay back what everybody, envoy and everybody else, received in the chain of note? I don't believe there's governing authority interpreting that provision yet. There are different courts that have dealt with it. I've not looked at it real recently, but I know at one point in time I was looking to try to see how courts were dealing with that issue because I didn't know how to craft a judgment based on how you put that into practice. But I think that provision can be read several ways. One of them is the way that you read it, that forfeiture means they're forfeiting their right to collect principal and interest as it would have been under a usury statute. Here, these loans are non-recourse. So once you strip away, find the deed of trust, the lien to be invalid, the lender can't collect on that loan. That's forfeiting. Somebody collected the full amount of the loan here. And so let's say we get all the way to that point and he says, I want my money back. Does Chase have to pay the whole amount? Let's say they are, you know, all these complaint problems, all these, quote, technical problems are out of the woods. Does Chase have to pay back money it didn't receive? My position would be no, Your Honor, that it would be limited to the amounts it received. And I did have one case that was tried to a bench trial at one point where the court made various findings in order that there would be actually disgorgement, and there were two lenders involved. Flagstar had been a lender for a period of maybe six months on the loan, and then Chase had picked it up after that. And the way that judgment was going to be structured was split, that Flagstar had to disgorge its amounts and Chase had to disgorge its amounts. I mean, here Envoy didn't do anything wrong. They didn't have the note to send back. His theory is Envoy, I guess, sent it to Chase. Chase is the one who should have sent it to you. Why should Envoy have to disgorge anything? Well, it would be a question, then, of who was the holder at the time payments were made. And as alleged, as you've pointed out, rightly, the petition doesn't tell us that. We're back to... Yes, that's why we started with there. Well, let me get a word in. I'm still back at, you know, the district court granted a 12b-6, which says, definitionally, a failure to state a claim upon which relief can be granted. You filed the 12b-6 motion, right? Yes, Your Honor. Asserting what? Because in your brief, you're arguing here that the statute of limitations had run, and then that's your primary argument, statute of limitations, then you go to secondary. So when you filed your 12b-6, what did you articulate as the basis? The 12b-6 articulated that the claim was barred by limitations under Priester. Also articulated that there was no constitutional violation that occurred because the loan was made on the required condition. So on the constitutional claim, those were the two arguments. On the breach of contract claim, the arguments were that Chase was not the proper defendant because there were not allegations that it was the holder of the note, that the loan provision actually required that the note be returned to the owner of the property, and Mr. Estes was no longer the owner of the property at the time of the payoff when the note would be returned. And the third argument was that there were no damages, actual damages, and that there was not an enforceable liquidated damage provision. The district court's ruling was principally based on the breach of contract assertion, correct? Yes and no. The court differentiated between the constitutional claim and found that as to the constitutional claim, there was not a constitutional violation because the loan documents contained the required condition. On the breach of contract claim, the district court found that there were not sufficient allegations about Chase being the owner or holder to be the proper party for a breach of contract. Well, as I said, I'm back on first principles. To me, this is stretched way beyond 12b-6, talking about all these policies and how the loan originates and all of that. That's beyond the scope of a 12b-6 determination. It's on the face of the complaint, whether or not a claim can be stated on any basis. And that, to me, is the narrowness of it. So I'm sort of hard put to how to get to a question certifying to the Texas Supreme Court when . . . I mean, in the cases where we've certified, I mean, it's when you're down to the only way to decide this case is that issue, and it's framed for that. This case, to me, is not framed for that. It's a naked 12b-6. Either you win on Stringer and what it says or some other basis. Now, 12b-6, we can consider anything judicial notice on the public record, but it doesn't sound to me that there's something in the public record that's been urged that the district court was to take into consideration in connection with the 12b-6. There was no urging of amendment of a complaint. So, to me, this is up or down on the 12b-6, the way you argued it, what the district court decided, and whatever is pled, because it just doesn't seem to me that the vitality of certifying it works when the narrowness of a 12b-6 has really not been exhausted either by the parties or by the district court. The magistrate made a recommendation, the district court did this. I mean, to the point that Judge Haynes asked him, it just looks to me, this is on the face of the complainant. So much of what you all are arguing is beyond the face of the complaint. I mean, to get to all, it's all out the record. I just don't quite understand. Your primary argument, it seemed, was to dismiss, because on the face of what he did plead, the four-year statute of limitations barred him. That was your main argument, wasn't it? That is certainly our primary argument on the constitutional claim. Was that even assuming arrest, that he had four years, and that was barred. What did the district court say about the statute of limitations? I don't remember. It dropped a footnote saying that it would not consider it because it had ruled on the issue of whether or not there was a constitutional violation. Did the report and recommendation of the magistrate address the statute of limitations? I'm sorry. The magistrate's report and recommendation dropped a footnote saying that it was not reaching the limitations issue, and the district court adopted that. All right. Well, you've got to realize, I mean, we've got the argument. It just seems to me it's pitched up here a whole lot differently than cases I've been on where we ended up. I mean, we hadn't agreed to do that, but this case has significant missing elements to it in terms of framing something to get. I just don't see us making, quote, an eerie guess about what Texas law is or ought to be when there are deficiencies both with respect to the complaint and or what the urgings, and there's not a firm ruling by the district court on what the major issue that you even pled. So to me, maybe it ought to go back. I mean, if we don't affirm it, maybe it ought to go back to be considered in a summary judgment context where you all can just go on forever about what was done, what wasn't done, and all of that. I mean, that's not a question. That's just sort of a rumination here. But I'm bothered by the 12B6 posture and these eloquent arguments about the Texas Constitution. Those two things are not squaring with me, and I haven't seen anybody cite a case where we've gone from A to Z there in this posture with the court. All the arguments is about the Constitution, et cetera, and I'm waiting. So hopefully when Mr. Kidd comes back up, he can assuage my dissonance about that posture. You understand where I'm going? I do, Your Honor, and I think that this case could be affirmed without getting to the bigger constitutional issue. It can be affirmed on the limitations ground. Priester has talked about that, and there have been eight cases in the last two years on that limitations issue out of the Fifth Circuit. So I think that can be a grounds for affirming on the constitutional claim. And on the breach of contract claim, there certainly are the issues that Justice Haynes has raised regarding the deficiency in the pleading itself. So I think it's possible that this case is affirmed in the waiver issue. It's possible this case can be affirmed without delving into the bigger constitutional issue. All right. Other questions from the panel? All right. Thank you, ma'am. Mr. Kidd, you're back up on. Yes. What did you say about the, I mean, the district court's rule on the statute of limitations claim? So I may have seen you brief somewhere, but what was their principal argument that you shot out of luck based on the four years in Priester governance? Okay. I'm not here. I know the Court is not going to reconsider Priester. But Priester, this particular case, this circumstance, would be an exception to Priester because what Priester looked at was and the way it analyzed it was in the legal injury rule. When does the legal injury occur and start the running of the four-year statute of limitations from that point? In each of the claims in Priester, which I think were where the loan was closed and the 12-day notice that the Constitution requires, those have to occur at origination. So the legal injury, the harm which would give rise to the potential claim, occurred then. This particular obligation to return the note and give a release of lend is the only one of the 26 requirements under the Constitution that they're not required to do at origination. What about the foreclosure? The foreclosure. You have to put it in your note that you'll do it judicially, but then you won't be doing the foreclosure until sometime later. Yes, but— It's like this. You put in your note that we'll return the note, but then you won't be doing that until sometime later. Actually, the creation of the lend is at origination, and that's what the Constitution requires is that that lend be limited such that it cannot be foreclosed except judicially. When you go out, and in the Robinson case, they foreclosed a month late past the order. That essentially is a wrongful foreclosure because the bank did not have the power or authority to foreclose at that time. So is that a forfeiture, or is that just you get your breach of contract damages? Essentially, you get the reversal of the foreclosure. But not forfeiture. But not forfeiture. Then why is that different from this? Because, one, the bank's not required to foreclose, and, two, they didn't have the power to foreclose. That was the reason they could set aside that foreclosure sale. That's the reason the court did it because the lend as created, their power as created, was in conformance with the Constitution. However, the obligation to return the note can't be—you know, you can't breach that. You can't have the facts giving rise to the claim until after the note's been paid off, and that can't occur at origination. That's when the borrower borrows the money. What about the prepayment penalty? I mean, you can't do a penalty on prepayment until somebody's prepaid. So messing that up is going to come—I mean, some of this stuff's going to come down the pike, and some of it's going to be at the time. The note can't require a prepayment penalty. That is at origination. And if the rights in the note don't allow—you know, prohibit prepayment penalties, then the borrower doesn't have to pay them, and the bank can't collect them. It is all—all of those— The bank sends you some form that says you owe this, and I'm an unsophisticated purchaser, and I'm scared. I get this threatening-looking letter, and so I send in my money, and I pay a prepayment penalty that I didn't owe. Now can I sue for forfeiture of the principal and interest? Under—I think under Vincent and Robinson, you cannot. I think under that circumstance, what you have— I thought your argument basically was that the constitutional remedies operate at the time that the issue comes to the fore. But now you're saying something different. You're saying that this provision is an exception to the rule that she announced. You agree with her that it's all origination except for the one case that you're bringing. The prepayment penalty, since you don't owe it, that obligation is created at closing, just like the obligation for them to return the promissory note is created at closing, but it can't be violated then. It could only be violated later. Otherwise, it is—you know, it's just a question of forms. It's check all the boxes, and there are no consequences. And— That's true with all these other things we discussed. I disagree. I disagree. The other provisions would render the lien unenforceable, but the failure to pay the—or to return the note doesn't render the note unenforceable because it's been paid off. It doesn't render the lien unenforceable because it's been paid off. But the other ones, in order to obtain a valid lien, they have to make—they have to check all those boxes and do it correctly. Otherwise, they have no lien and they have a nonrecourse loan. All right. Mr. Kidd, thank you for your argument and your briefing. The case ends.